**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>      Plaintiff,<br> vs.<br><br>DUAL TRUCKING AND TRANSPORT, LLC, f/k/a Capital Transportation Logistics, LLC, and DUAL TRUCKING, INC.,<br><br>     Defendants. | CV-18-134-GF-BMM<br><br><br>**ORDER** |

**INTRODUCTION**

The Court held a hearing on August 29, 2019, on several motions in this declaratory judgment action brought by Endurance American Specialty Insurance Company ("Endurance") against defendants Duel Trucking and Transport, LLC ("DTT"), *formerly known as* Capital Transportation Logistics, LLC ("Capital"), and Dual Trucking, Inc. ("DTI") (collectively, "Defendants"). (Docs. 71 & 150.)

The parties informed the Court that they had resolved Defendants' Motion to Quash Deposition Subpoenas (Doc. 123) and that the issue is moot. (Doc. 150.) The Court denied Defendants' Motion for Judgment on the Pleadings (Doc. 113) without prejudice and deferred ruling on Endurance's Motion for Summary Judgment Regarding the Endurance Policy Issued to Capital (Doc. 129). (Doc. 150.) This Order addresses Endurance's Motion for Summary Judgment Regarding the Endurance Policy Issued to DTI (Doc. 134).

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendants are involved in two underlying Montana state court proceedings in the Fifteenth Judicial District Court, Roosevelt County. (Doc. 71 at 2.) The state court proceedings arise out of claims for contamination and property damage. Defendants allegedly contaminated property leased from Wagner and Garth

Harmon ("the Harmons") by storing, treating, and disposing of wastes and toxic materials generated by off-site oil and gas fracking operations. (Doc. 136 at 2.)

DTT remains the only defendant in *State of Montana Department of Environmental Quality v. DTT*, Cause No. DV-14-67, 15th Judicial District Court for Roosevelt County, MT ("*MDEQ Suit*"). (Doc. 136-1.) In the *MDEQ Suit*, the Montana Department of Environmental Quality ("MDEQ") alleges that DTT violated state law regarding waste storage and disposal and that these violations resulted in contamination. (*Id.* at 4, 8.) DTI and DTT are both defendants, along with others, in *Garth L. Harmon and Wagner Harmon v. DTI, et al.*, No. DV-15-15, 15th Judicial District Court for Roosevelt County, MT ("*Harmon Suit*"). (Doc. 136-2.) The *Harmon Suit* alleges various causes of action for property damage, including claims based on breach of contract, negligence, trespass, and nuisance. (*Id.* at 23, 30, 32, 33.)

Endurance issued two contractors pollution liability policies to the Defendants in 2011. (Docs. 137-1 & 137-2.) Defendants tendered the *MDEQ Suit* and the *Harmon Suit* to Endurance in June 2016. (Doc. 136 at 3.) Endurance agreed to defend both actions pursuant to a full reservation of rights. (*Id.*)

Capital Policy:

Endurance issued the first policy to Capital ("Capital Policy") on May 23, 2011. (Doc. 137-1 at 1.) The Capital Policy listed Capital as the named insured and set a policy period of May 23, 2011, to May 23, 2012. (*Id.*) The Capital Policy covered damages resulting from pollution conditions first incurred during the policy period. (*Id.* at 6.) Endurance canceled the Capital Policy at Capital's request on October 1, 2011. (*Id.* at 44.) This cancellation request terminated the policy period. (*Id.*)

The parties appear to agree that, at the time of the motions hearing on August 29, 2019, neither the *MDEQ Suit*, nor the *Harmon Suit*, name Capital as a defendant. The parties also seem to agree that neither suit alleges wrongful conduct that occurred within the Capital Policy's policy period of May 23, 2011, to October 1, 2011. Endurance nevertheless sought a summary judgment ruling on Endurance's obligations under the Capital Policy because the Defendants tendered the *MDEQ Suit* and the *Harmon Suit* to Endurance under the Capital Policy. The Court demes it prudent to defer any ruling on Endurance's summary judgment motion regarding the Capital Policy until further factual developments clarify the potential for any claims for coverage arising under the policy. (Doc. 150.)

DTI Policy:

Endurance issued the second policy to DTI ("DTI Policy") on September 30, 2011. (Doc. 137-2.) The DTI Policy listed DTI as the named insured and set a policy period of September 30, 2011, to October 1, 2012. (*Id.* at 1.) Similar to the Capital Policy, the DTI Policy covered damages resulting from pollution conditions first incurred during the policy period. (*Id.* at 6.) Endurance added a named insured endorsement to the DTI Policy, effective January 13, 2012. (*Id.* at 42.) The endorsement added DTT and Dual Trucking of Montana, LLC (DTM) as named insureds on the DTI Policy. (*Id.* at 42.)

The DTI Policy covered DTI, DTT, and DTM for "*property damage*" for which they became legally obligated to pay as the result of "a *pollution condition* at any site where any *insured* . . . is performing, or has performed, any contracting or remediation operations anywhere in the world . . . [if] the *pollution condition* first incurred during the *policy period* . . . ." (Doc. 137-2 at 6.) The policy defined the term "pollution condition" as follows:

> [T]he discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, *waste* materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water which results in bodily injury or *property damage*. A continuous, related, repeated, or similar series of discharges, dispersals, releases, or escapes of pollutants at or from a site shall constitute a single *pollution condition*.

> Related *pollution conditions* are those *pollution conditions* that arise
> out of, are based on, relate to or are in consequence of, the sam[e]
> facts, circumstances or situations.

(*Id.* at 12.) The DTI Policy also contained an owned-property exclusion ("Owned-Property Exclusion"). (*Id.* at 14-15.)

The Harmons first leased their property to DTI on August 22, 2011. (Docs. 136-3 at 2 & 136-4 at 28-41.) The lease stated that DTI would use the property as "a trucking mobilization facility to repair, dispatch[,] and operate trucks." (Doc. 136-4 at 30.) The lease further stated that the property "shall not be used for any unlawful purpose." (*Id.*) DTI assigned the lease to DTM on December 8, 2011. (Docs. 136-3 at 2 & 136-4 at 44-59.) Capital changed its name to DTT on December 28, 2011. (Doc. 131-3 at 5.)

The *Harmon Suit* alleges that DTI, DTT, and/or DTM began bringing oil-field waste onto the leased property sometime between December 2011 and October 2012. (Doc. 136-2 at 7.) The suit further alleges that DTI, DTT, and/or DTM started operating a solid waste disposal facility for the oil-field waste in July 2012. (*Id.*) The *MDEQ Suit* alleges that DTT began using the leased property to treat, recover, store, and/or dispose of oil-field waste without a license on or before July 26, 2012. (*Id.* at 2-3.) The DTI Policy expired on October 1, 2012. (Doc. 132-2 at 1.)

Endurance filed this action in United States District Court for the Eastern

District of Louisiana in February 2017. Endurance asked the Court to determine

Endurance's obligations under the Capital and DTI Policies. (Doc. 1.) The District

Court in Louisiana resolved various threshold issues before transferring the case to

the District of Montana in October 2018. (Doc. 78 at 19.) In its order transferring

venue to Montana, the District Court in Louisiana determined that Louisiana law

applies to this case. (*Id.* at 5-8.) Endurance filed a motion for summary judgment

regarding the DTI Policy on July 26, 2019. (Doc. 134.) The Court will address that

motion for summary judgment.

## DISCUSSION

A court should grant summary judgment where the movant demonstrates

that no genuine dispute exists "as to any material fact" and the movant is "entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Louisiana law, an

insurance policy represents a contract between two parties. A court should construe

the insurance policy using general rules of contract interpretation. *Green ex rel.*

*Peterson v. Johnson*, 149 So. 3d 766, 770 (La. 2014).

To interpret an insurance policy, the court must determine the parties'

common intent, starting with a review of the insurance contract's words. *Green*,

149 So. 3d at 770-71. "When the words of a contract are clear and explicit and lead

to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. The court must enforce the contract as written. *Green*, 149 So. 3d at 771. The court should not interpret an insurance policy, however, "in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43 (La. 2000) (quoting *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)).

The insured bears the initial burden of establishing that its claim falls within the insurance policy's scope of coverage. *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002). The insurer, by contrast, bears the burden of proving that the insurance policy specifically excludes the insured's claim. *Tunstall*, 809 So. 2d at 921. A court should construe exclusionary clauses strictly and narrowly in favor of coverage. *Calogero v. Safeway Ins. Co. of Louisiana*, 753 So. 2d 170, 173 (La. 2000).

## I.     THE DTI POLICY'S SCOPE OF COVERAGE

DTI and DTT both seek coverage and defense services from Endurance under the DTI Policy in the *Harmon Suit*. DTT seeks coverage and defense services from Endurance under the DTI Policy in the *MDEQ Suit*. DTI and DTT,

as the insureds seeking coverage, bear the initial burden of establishing that their claims fall within the DTI Policy's scope of coverage. *Tunstall*, 809 So. 2d at 921.

The parties agree that the DTI Policy covers any alleged wrongful actions undertaken by DTT after DTI added DTT as a named insured on January 12, 2012. (Doc. 148 at 4.) This coverage for DTT ran until the policy period expired on October 1, 2012. (*Id.*) Endurance asserts, however, that DTI has failed to meet its initial burden of demonstrating that the plaintiffs' allegations against DTI in the *Harmon Suit* fall within the DTI Policy's scope of coverage. (Doc. 135 at 18.)

Endurance contends that DTI cannot establish that Endurance legally would be obligated to pay damage resulting from a "pollution condition" that was first incurred during the policy period. (*Id.* at 19.) Endurance reasons that DTI has no claim for coverage when DTI alleges that it served only the following limited roles in the operation on the property: (1) it signed the initial lease in August 2011; and (2) it constructed two buildings on the property for a trucking operation. (*Id.*) Endurance suggests that these limited activities by DTI would not implicate coverage under the DTI Policy that covered "property damage" that DTI would be legally obligated to pay as the result of a "pollution condition" first incurred during the policy period. (*Id.*)

Endurance also points to the fact that DTI assigned the Harmon lease to DTM on December 8, 2011. (Doc. 135 at 19.) The Assignment transferred all of DTI's rights and interests in the lease agreement to DTM. (Doc 136-4 at 44.) DTM agreed to "assume, observe, perform, fulfill and be bound by all terms, covenants, conditions and obligations" of the Harmon lease. (*Id.*) Endurance further notes that DTM and the Harmons entered into a Lease Purchase Agreement for the leased property on October 12, 2012. (Docs. 135 at 20 & 136-4 at 62.) The parties agreed to "replace" the original lease and "declare" the original lease "null and void." (Doc. 136-4 at 62.)

Endurance also relies on the following discovery responses from DTI in support of its claim that none of DTI's activities could have triggered coverage for "property damage" under the policy:

> DTI never "planned, developed, orchestrated, oversaw, and/or applied for permits relating to the subject property" [concerning] any activities to "treat, store, contain, and/or chemically or mechanically alter the materials and waste that were received at the subject property." At no time did DTI ever deliver and/or transport any materials to said property and/or "treat, store, contain, and/or chemically or mechanically alter the materials and waste that were received at the subject property."

(*Id.* at 11-12.) Endurance argues that DTI admits that it engaged in no activities on the leased property that could trigger the DTI Policy's coverage. (Doc. 135 at 22.)

Endurance asserts that these factors demonstrate that no genuine dispute exists as to any material fact regarding DTI's involvement at the leased property.

At this stage in the proceedings, the Court cannot conclude that no genuine dispute exists as to any material fact regarding DTI's activities at the Harmon property and corresponding coverage under the DTI Policy. DTI signed the initial lease in August 2011. At the very least, DTI constructed two buildings on the property to be used for "trucking operations." It remains unknown how DTI's reported actions—limited as they may have been—combine with operations undertaken by DTT and DTM.

The DTI Policy broadly defined the term "pollution condition" to include everything from the discharge of "fumes" and "waste materials" onto the land or into the atmosphere that result in "property damage." (Doc 137-2 at 12.) DTI may have had no or very little involvement in the waste-treatment facility's construction and operation. A conclusion that none of DTI's activities resulted in a "pollution condition," however, proves premature at this point. Factual questions exist that render summary judgment inappropriate.

## II.    THE OWNED-PROPERTY EXCLUSION

The Court next must consider whether the Owned-Property Exclusion entitles Endurance to summary judgment. Endurance argues that the DTI Policy's

Owned-Property Exclusion bars coverage. (Doc. 135 at 24.) As the insurer,

Endurance bears the burden of proving that the DTI Policy specifically excludes

DTI's and DTT's claims. *See Tunstall*, 809 So. 2d at 921. The Owned-Property

Exclusion provides as follows:

> [Endurance] shall have no obligation whatsoever under [the DTI
> Policy] to make any payment of any kind . . . or to arrange for,
> provide, or pay for any defense for . . . [a]ny *claim* for any *property
> damage* to any real or personal property that was owned in whole or
> in part, or was rented, occupied or in the care, custody or control of
> any *insured* at any time.

(Doc. 137-2 at 14-15.)

Endurance asserts that the Owned-Property Exclusion bars coverage in light

of the undisputed facts that the contamination has been found only on the Harmon

property. (Doc. 135 at 24.) Endurance argues that Defendants leased and controlled

the Harmon property. (*Id.*)  Endurance cites environmental assessments performed

on the Harmon property that indicate contamination could be found only on the

Harmon property. Endurance contends that those assessments prove conclusively

that no off-site or groundwater contamination has occurred. (*Id.*)

Endurance relies on *Norfolk S. Corp. v. Cal. Union Ins. Co.*, 859 So. 2d 167,

193 (La. App. 1 Cir. 2003), *writ denied*, 861 So. 2d 579 (La. 2003), and *Pioneer

Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014), for the proposition

that liability policies provide no first-party coverage for losses sustained by the

insured on its own property under Louisiana law. (Doc. 135 at 26-31.) The Court must construe the Owned-Property Exclusion strictly and narrowly in favor of coverage. *Calogero*, 753 So. 2d at 173.

The Louisiana Court in *Norfolk* noted that the owned-property exclusions in general liability policies serve to "effectuate the intent that liability insurance is designed to provide compensation for damages to property not owned or controlled by the insured." *Norfolk*, 859 So. 2d at 193. The record in that case indicated clear evidence of actual damage to third-party property. The court determined that the owned-property exclusion did not preclude coverage under those circumstances. *Norfolk*, 859 So. 2d at 195.

It appears, by contrast, that a factual dispute exists regarding the scope and location of the alleged contamination in this case. (Doc. 146 at 10.) Defendants suggest that the *Harmon Suit* raises factual issues regarding whether the contamination remains confined to the Harmon property. (*Id.*) The Owned-Property Exclusion excludes coverage for damage to property that the Defendants owned, rented, occupied, cared for, or controlled. (Doc. 137-2 at 14-15.) The Owned-Property Exclusion would not exclude coverage for damage to off-site property, or to groundwater, in the same manner as determined by the Louisiana Court in *Norfolk*. *Norfolk*, 859 So. 2d at 195.

Summary judgment is only appropriate where no genuine issues of material fact exist. Fed. R. Civ. P. 56(a). The scope and location of the contamination remains a genuine issue of material fact because it affects whether the Owned-Property Exclusion could exclude coverage. The need to resolve this genuine issue of material fact precludes summary judgment at this stage of the proceeding. Fed. R. Civ. P. 56(a).

The Court further notes that the policy exclusion at issue in *Pioneer* contained similar, but potentially broader, language than the Owned-Property Exclusion at issue in this case. *Pioneer*, 767 F.3d at 509-10. For example, the exclusions in *Pioneer* precluded insurance coverage for the costs of remediating the contamination at issue. *Pioneer*, 767 F.3d at 516, 518. The Fifth Circuit interpreted the policy language to exclude coverage for the costs of remediating the contamination. *Id.* The Owned-Property Exclusion here provides that Endurance has no obligation to provide a defense for or pay for any claim for "property damage" that Defendants owned, rented, or controlled. (Doc. 137-2 at 14-15.) The DTI Policy does not specifically exclude coverage for the cost of preventing damage to another's property. (Doc. 137-2 at 12, 14-15.) It appears that further facts must be developed to determine whether the Owned-Property Exclusion

would preclude coverage depending on the scope and location of the contamination.

MDEQ's presence as a party in the *MDEQ Suit* also affects the Court's analysis of the Owned-Property Exclusion. MDEQ, as a governmental regulatory agency, seeks to impose liability on DTT in the *MDEQ Suit*. (Doc. 146 at 10.) No court in Louisiana has considered how a governmental regulatory agency's involvement in a lawsuit affects application of an owned-property exclusion. Several Courts of Appeal have considered that issue, however, and determined that a liability policy's owned-property exclusion serves as no bar to coverage when a governmental regulatory agency, as a third-party to the insurance policy, seeks to impose liability on the alleged polluter. *See, e.g.*, *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir. 1994); *Anderson Dev. Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1133-35 (6th Cir. 1995).

The Seventh Circuit in *Patz* decided that the owned-property exclusion did not exclude coverage for damage to the insured's own property based on the insured's claim that it faced liability from the regulatory actions of the government, a third party. *Patz*, 15 F.3d at 705. The Sixth Circuit in *Anderson Dev. Co.* rejected the notion that an owned property exclusion clause applies to on-site environmental clean-up costs mandated by the Environmental Protection Agency.

*Anderson Dev. Co.*, 49 F.3d at 1133-35. The District Court in *Pac. Hide & Fur Depot v. Great Am. Ins. Co.*, 23 F. Supp. 3d 1208, 1222-23 (D. Mont. 2014), likewise noted that support exists "for the position that owned property exclusions do not apply in situations where the government initiates a suit or proceeding to prevent or remediate environmental change." The fact that MDEQ, a governmental regulatory agency, initiated the *MDEQ Suit*, weighs in favor of coverage despite the Owned-Property Exclusion.

Endurance has not yet met the high burden of establishing that the Owned-Property Exclusion specifically excludes coverage. *See Tunstall*, 809 So. 2d at 921. Genuine issues of material fact regarding proper application of the Owned-Property Exclusion exist that preclude summary judgment at this stage.

## ORDER

It is hereby **ORDERED** that Endurance's Motion for Summary Judgment Regarding Endurance Policy Issued to Dual Trucking, Inc. (Doc. 134) is **DENIED.**

Defendants' Motion for Judgment on the Pleadings (Doc. 113) is **DENIED** without prejudice for possible refiling.

It is further **ORDERED** that Defendants' Motion to Quash Deposition Subpoenas (Doc. 123) is **MOOT**.

The Court will defer its ruling on Endurance's Motion for Summary Judgment Regarding the Endurance Policy Issued to Capital (Doc. 129).

DATED this 12th day of September, 2019.


_____
Brian Morris
United States District Court Judge