IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DUAL TRUCKING AND TRANSPORT, LLC, DUAL TRUCKING, INC., and DUAL TRUCKING OF MONTANA, LLC,<br><br>Defendants. | CV-18-134-GF-BMM<br><br>**ORDER** |

**INTRODUCTION**

Plaintiff Endurance American Specialty Insurance ("Endurance") moves for summary judgment in this declaratory judgment action against Defendants Dual Trucking and Transport, LLC ("DTT"), fka Capital Transportation Logistics, LLC ("Capital"), and Dual Trucking, Inc. ("DTI") (collectively "Dual"). (Doc. 184.) Dual opposes the motion. (Doc. 189.) The Court conducted a motion hearing on February 13, 2023. (Doc. 193.)

**FACTUAL AND LEGAL BACKGROUND**

Endurance is an insurer. (Doc. 160 at 3–4.) Dual is a Louisiana company and the insured in this action. (Doc. 189 at 1–2.) The action arises from Dual's trucking

operations in Montana to haul fluids produced by oil rig sites. (Doc. 184-1 at 14.) Endurance has issued two policies to Dual: (1) Policy No. ECC 101012609-00, issued to Capital before it changed its name to DTT ("Capital Policy"), and (2) Policy No. ECC 10101 3276-00, issued to DTI ("DTI Policy"). (Doc. 160 at 1–2.) Endurance's third summary judgment motion concerns only the DTI Policy. (Doc. 184-1 at 13.)

Dual started operating in Montana in August 2011. (Doc. 185 at 24.) Dual ceased operations in approximately October 2012. (*Id.*) DTI signed a lease in 2011 with Garth and Wagoner Harmon (collectively "Harmons") to establish a home base in Bainville, Montana for its operations ("Bainville site"). (*Id.* at 12.) DTI assigned the lease to Dual Trucking of Montana, LLC ("DTM"), in 2012. (*Id.* at 12–13.) DTT also engaged in trucking operations at the Bainville site during this time period. (*Id.* at 1–16.) DTM established an on-site oilfield waste treatment facility. (*Id.* at 25–28.) DTI, DTT, and DTM shared key officers, directors, and managerial staff. (*Id.* at 9–13.)

Underlying Legal Actions against Dual.

The Montana Department of Environmental Quality ("MDEQ") issued DTT a Warning Letter regarding unpermitted waste treatment operations at the Bainville site on September 17, 2012. (*Id.* at 13.) MDEQ issued six Violation Letters to DTT. (*Id.* at 16.) MDEQ sued DTT on November 25, 2014, for contamination and

for failure to obtain a permit. (*Id.* at 2.) Harmons brought an action in state court against Dual on June 23, 2015, alleging contamination, property damage, breach of contract, and negligence ("Harmon Action"). (*Id.* at 3.) The Montana Fifteenth Judicial District Court, Roosevelt County, issued a summary judgment order in the Harmon Action on February 2, 2023. (Doc. 194.)

The state district court determined that Dual had "defaulted under [its lease with the Harmons] by causing the pollution and contamination of the leased property" and by "causing and/or allowing insurance coverage to be canceled and/or [to] lapse" on the basis of "conducting an illegal operation of an unlicensed SWMS [solid waste management site] facility on the Harmon[s'] property in violation of the terms of the Leases[.]" (Doc. 194 at 7.) The Montana state district court's Order granted partial summary judgment for Harmons on the issue of Dual's liability for each of their ten claims. (*Id.*) The Order additionally granted summary judgment against Dual for all of their counterclaims. (*Id.* at 7–8.)

Endurance's Declaratory Judgment Action.

Endurance has defended Dual in both cases pursuant to the DTI Policy under a full reservation of rights. (Doc. 185 at 35.) Endurance brought this declaratory judgment action against Dual on February 14, 2017. (Doc. 1.) Endurance filed, with leave of the Court, a Fifth Amended Complaint on September 17, 2019. (Doc. 160.) Endurance seeks the following relief: (1) declaratory judgment that it owes

3

Dual no defense or indemnity coverage, and (2) attorney's fees, interest, and costs. (*Id.* at 28–29.)

Endurance filed two Motions for Summary Judgment in 2019. (Doc. 129; Doc. 134). The first motion for summary judgment concerned the Capital Policy. The second motion for summary judgment concerned the DTI Policy. The Court denied the second motion for summary judgment on September 12, 2019, on the basis that Endurance had not yet demonstrated that the DTI Policy's Owned-Property Exclusion specifically barred coverage. (Doc. 154 at 16.) The Court issued an Order on November 14, 2019, granting Endurance's first motion for summary judgment (Doc. 129) with respect to the Capital Policy. (Doc. 171.) The Court determined that coverage under the Capital Policy had not been triggered. (*Id.* at 1.) DTT did not appeal.

Admiral Declaratory Judgment Action.

The Court also presided over a 2020 declaratory judgment action filed by Admiral Insurance Company ("Admiral") that addressed six pollution liability policies issued to Dual immediately after the Endurance Policy ("Admiral Action"). (Doc. 185 at 4.) The Admiral action concerned insurance coverage for the same underlying actions as this case: the MDEQ and Harmon actions. (*Id.*) The Court granted Admiral's motion for summary judgment on May 25, 2021. *Admiral Ins. Co. v. Dual Trucking, Inc.*, CV-20-53-GF-BMM, 2021 WL 1788681 (D.

Mont. May 5, 2021). The Ninth Circuit affirmed the Court's ruling. *Admiral Ins. Co. v. Dual Trucking, Inc.*, No. 21-35433, 2022 WL 1262013 (9th Cir. Apr. 28, 2022).

Endurance's Third Motion for Summary Judgment.

Endurance filed a third motion for summary judgment on December 14, 2022. (Doc. 184.) The motion seeks a declaration from the Court that Dual's conduct has barred DTI Policy coverage and that Endurance has no duty to defend Dual. (Doc. 184-1 at 13–14.) Endurance relies upon the "relevant findings, judicial admissions, and rulings in the Admiral Action." (*Id.* at 15.) Dual filed a Response on January 24, 2023. (Doc. 189.) Endurance filed a Reply on February 9, 2023. (Doc. 192.) The Court conducted a motion hearing on February 13, 2023. (Doc. 193.)

DTI Policy.

The DTI Policy covers liability arising from "pollution conditions" due to the insured's offsite operations during the policy period. (Doc. 185 at 29.) The DTI Policy covers "property damage" as a result of a "pollution condition at any site where the insured . . . is performing, or has performed, any contracting or remediation operations anywhere in the world," if the pollution condition first occurs during the policy period and proves "unexpected and unintended from the standpoint of the insured." (*Id.* at 29–30.) The DTI Policy defines "pollution

condition" as "the discharge, dispersal, [or] release . . . of toxic chemicals, liquids or gases, waste materials or other irritants, contaminants[,] or pollutants into or upon land, . . . which results in property damage." (*Id.*)

The DTI Policy contains exclusions for claims arising from the following conduct: (C) "any insured's intentional, willful or deliberate noncompliance" with any statutory or regulatory authority or any "notice of violation, notice letter executive order, or instruction of a governmental agency or body;" (I) any waste or other materials "transported . . . to any location located beyond the boundaries of a site at which an insured has performed any contracting or site remediation services;" and (J) "any property damage to any real or personal property that was owned in whole or in part, or was rented, occupied or in the care, custody or control of any insured it at any time." (*Id.* at 33–34.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

I. **Choice of Law.**

Endurance highlights the Court's application of Louisiana law to Endurance's previous summary judgment motions, as well as the Admiral summary judgment motion. (Doc. 184-1 at 17.) This case originated in the Eastern District of Louisiana. The district court for the Eastern District of Louisiana transferred the case to the District of Montana and specified that Louisiana law must be applied to the coverage issues under *Van Dusen v. Barrack*, 376 U.S. 612, 636–37 (1964). Endurance argues that the Court must continue to apply Louisiana law. (Doc. 184-1 at 17.) Dual does not contest that Louisiana law should apply. The Court will continue to apply Louisiana law.

II. **Summary Judgment Against DTM.**

Endurance argues that DTM has failed to oppose Endurance's summary judgment motion and has failed to file a Statement of Disputed Facts. (Doc. 192 at 3–4.) Counsel for DTT and DTI filed Dual's Response (Doc. 189) and Statement of Disputed Facts (Doc. 190). Defense counsel did not file these documents on behalf of DTM. DTM has failed to file a separate response to Endurance's summary judgment motion. The Court will grant summary judgment against DTM on the basis that it has conceded that no material facts remain in dispute. Fed. R. Civ. P. 56(a).

### III. Whether Dual's Conduct Rescinded the DTI Policy.

Endurance argues that the entire DTI policy should be rescinded. (Doc. 184-1 at 18–25.) Endurance asserts that Dual engaged in intentional misrepresentations and omissions in its application for insurance. (*Id.* at 18.) Endurance specifically notes that Dual failed to mention on-site treatment and waste processing operations in its application. (*Id.* at 18, 22–25.) Dual's application represented instead that its operations were "100% trucking." (*Id.* at 19.) Dual asserted that DTT and DTM, both added later to the DTI Policy, presented no additional liabilities. (*Id.*) Endurance contends that these misrepresentations and omissions rescinded the DTI Policy under both the policy and Louisiana law.

#### A. Rescission Under the Terms of the Policy.

The DTI Policy provides that Endurance's duty to defend and indemnify the insured "shall immediately terminate" if the application or any attached material "contains any material misrepresentation of fact." (Doc. 185 at 30.) The DTI Policy further provides that the insured agrees that its warranties and representations made in the application "are true, correct and complete." (*Id.* at 34.) Finally, the DTI Policy states that Endurance issued the policy "in specific reliance upon the representations contained in the application." (*Id.*)

Endurance argues that Dual's misrepresentations and omissions in its application triggered the DTI Policy provisions for "immediate[] terminat[ion]" of

Endurance's duty to defend and indemnify. (Doc. 184-1 at 18–20.) Dual disputes that it has engaged in material misrepresentation or omissions. (Doc. 189 at 6–10.) Dual argues that the application statements at issue concerned only revenue-generating activity rather than all activity. (*Id.* at 6–7.) Dual maintains that its revenue came exclusively from trucking activities. (*Id.*) Dual claims that it never concealed that it was operating a trucking business to "haul[] oil field waste." (*Id.* at 10.) Dual argues that its application contained no material misrepresentations and that Dual possessed no intent to deceive. (*Id.* at 9.)

The Court already has found that Dual engaged in material misrepresentations in its insurance policy applications. The Court's May 5, 2021, Order in the Admiral Action granted partial summary judgment on the basis that Dual "materially misrepresented their knowledge of the pollution conditions at the Bainville Site." *Admiral*, 2021 WL 1788681, at *10. The Court concluded that these material misrepresentations triggered rescission of the policies at issue. *Id.* As in the Admiral Action, the Court determines that Dual engaged in material misrepresentations in the insurance policy application for the DTI Policy. Dual's material misstatements rendered the DTI Policy "void ab initio." *Id.*

B. **Rescission Under Louisiana Law.**

Louisiana law imposes a duty upon the insured to inform the insurer of all facts that might be used in determining whether the policy will be issued. *State*

9

*Farm Mut. Auto. Ins. Co. v. Bridges*, 36 So.3d 1142 (La. App. May 19, 2010); *St. Paul Fire and Marine Ins. Co. v. St. Clair*, 193 So.2d 821 (La. App. 1966). Material misrepresentations made during negotiations void an insurance policy from the beginning. La. R.S. § 22:860; *Mazur v. Gaudet*, 826 F. Supp. 188 (E.D. La. 1992). Courts generally do not require strict proof of fraud. *Pipes v. World Ins. Co. of Omaha, Neb.*, 150 F. Supp. 370 (E.D. La. 1957), *aff'd in part, rev'd in part*, 255 F.2d 464. Courts instead evaluate whether the information substantially would have increased the chances of a loss upon the risk insured against from the perspective of a reasonable insurer. *Id.*

Endurance argues that Dual's conduct amounts to material misrepresentations under Louisiana law on the basis that it directly impacted liability risk, whether insurance would be offered, and at what price insurance would be offered. (Doc. 184-1 at 25.) Endurance maintains that it would not have issued the DTI Policy under its current terms, if at all, had Dual provided information about the on-site waste treatment facility. (*Id.*) Dual argues that the Court must resolve any ambiguities in favor of the insured. *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002). (Doc. 189 at 8.) The Court need not resolve this issue in light of its determination that Dual's material misstatements in the insurance policy application rescinded the DTI Policy.

### IV. Whether Policy Exclusions Bar Coverage.

**A. Exclusion Based on Transport of Waste from Contracting Site.**

The Policy's off-site waste transport exclusion bars coverage for pollution conditions caused by waste trucked from a location "at which an insured has performed any contracting or site remediation services." (Doc. 185 at 33–34.) Endurance emphasizes that Dual ran the trucking company in addition to operating the waste treatment facility. (Doc. 184-1 at 27.) Endurance asserts that Dual's trucking contracts with oil-field drilling companies led to the contamination at issue. (*Id.*)

Dual responds that the off-site waste transport exclusion covers only "sites at which an insured has performed any contracting or site remediation services." (Doc. 189 at 10–11.) Dual contends that it never engaged in contracting or site remediation services at the site. (*Id.* at 11.) Dual has failed to allege any ambiguities in the waste transport exclusion. Dual's trucking of waste from the contracting site to the Bainville site constitutes off-site waste transport for purposes of the DTI Policy. The DTI Policy's off-site waste transport exclusion would bar coverage even had Dual's conduct not rescinded the DTI Policy. (Doc. 185 at 33–34.)

11

### B. "Owned or Occupied Property" Exclusion.

Endurance next argues that the "owned or occupied property" exclusion bars coverage. (Doc. 184-1 at 27–35.) The exclusion bars coverage for "any property damage to any real or personal property that was owned in whole or in part, or was rented, occupied or in the care, custody or control of any insured at any time." (Doc. 185 at 34.) Louisiana law applies the owned property exclusion in circumstances involving "on-site contamination with no impact to groundwater." (Doc. 184-1 at 30–31.)

Endurance highlights "undisputed [] evidence" that the pollution has not migrated off-site and that groundwater has not been impacted. (*Id.*) Dual argues that barring coverage would run counter to public policy, as it purchased the DTI Policy in good faith. *Forrest v. The Ville St. John Owners Assoc.*, 259 So. 3d 1063, 1076 (La. App. 2000). (Doc. 189 at 12–13.) Dual highlights the fact that the MDEQ regulatory action remains pending. (*Id.* at 12.) Dual contends that questions regarding the proper scope of the MEQ regulatory action render premature any application of the owned or occupied property exclusion. (*Id.*)

Dual's arguments about good faith and pending agency action prove unavailing. Courts have enforced the owned property exclusion under Louisiana law in circumstances involving agency action. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014); *Aspen Ins. U.K., LTD. v. Dune Energy, Inc.*,

400 Fed. App'x. 960 (5th Cir. 2010). On-site contamination may bar coverage even in the context of government-ordered environmental cleanup operations. *See, e.g.*, *Clarinet, LLC v. Essex Ins. Co.*, 712 F.3d 1246, 1249–50 (8th Cir. 2013); *Cedar Lane Invs. v. St. Paul Fire & Marine Ins. Co.*, 883 P.2d 600, 603 (Colo. Ct. App. 1994).

Dual further argues that the "owned or occupied property" exclusion does not apply to it because ownership of the property had not been judicially determined. (Doc. 189 at 11.) The Montana state district court's February 2, 2023 Order has resolved any factual questions regarding ownership, occupancy, and control of the Bainville site. (Doc. 194.) The undisputed facts establish that Dual occupied and controlled the Bainville site during the time period at issue. (Doc. 185 at 10; Doc. 190 at 25–27, 31.) Dual has failed to provide any evidence of off-site property damage. The Montana state district court's February 2, 2023 Order in the Harmon Action concluded that Dual had "conduct[ed] an illegal operation of an unlicensed [solid waste management facility]" and had "cause[d] the pollution and contamination" of the Bainville site. (Doc. 194 at 7.) The DTI Policy's "owned or occupied property" exclusion (Doc. 185 at 34) would bar coverage even had Dual's conduct not rescinded the DTI Policy.

### C. Exclusion Based on Knowing Statutory Violations.

Endurance argues, in the alternative, that Dual's knowing statutory violations bar coverage. (Doc. 184-1 at 35–39.) The DTI Policy bars coverage for "any claim arising from any insured's intentional, willful or deliberate noncompliance" with a statute, regulation, or ordinance, as well as any "administrative complaint or notice of violation, notice letter, executive order, or instruction of a governmental agency or body." (Doc. 185 at 33.) Endurance maintains that Dual has acted intentionally in violating applicable statutes and regulations. (Doc. 184-1 at 36–37.)

Dual does not dispute that it operated the waste treatment facility. Dual responds that "extenuating circumstances" applied to its solid waste permitting activities. (Doc. 189 at 14.) Dual argues that it was "actively pursuing" the MDEQ permit application process and was operating its business "with the express authorization of MDEQ." (*Id.*) Dual contests the relevance of the MDEQ warning and violation letters. (*Id.* at 14–15.) Dual asserts that it met its permitting obligations until it wrapped up its trucking business on April 30, 2014. (*Id.*) Dual notes that MDEQ rejected its offer to remove the remaining on-site drill cuttings and alleges that MDEQ's decision "result[ed] in the situation at the site at this time." (*Id.*)

The record establishes that Dual's unlicensed and intentional operation of the Bainville site continued until 2014, well past the October 1, 2012 termination of the DTI Policy. (Doc. 185 at 10; Doc. 109 at 31.) The record further establishes that Dual received six MDEQ violation letters and that the MDEQ sued Dual for statutory violations. (Doc. 185 at 13–19; Doc. 190 at 16–24.) The Montana state district court's February 2, 2023 Order in the Harmon action further confirms that Dual had "cause[ed] the pollution and contamination" of the Bainville site and that its operations proved "unlicensed" and "illegal." (Doc. 194 at 7.) The DTI Policy's "knowing statutory violation" exclusion (Doc. 185 at 33) would bar coverage even had Dual's conduct not rescinded the DTI Policy.

## CONCLUSION

Admiral owes no duty to defend or indemnify Dual under the DTI Policy. The Court will grant summary judgment against DTM on the basis that it failed to respond to the summary judgment motion and has failed to file a Statement of Disputed Facts. The Court also will grant summary judgment against DTI and DTT, the other Dual defendants, on two independent bases. Dual's material misrepresentations in its policy application rendered the DTI Policy "void ab initio." *Admiral*, 2021 WL 1788681, at *10. The DTI Policy additionally contains exclusions that bar coverage for the same reasons already determined in the Admiral and Harmon actions. Dual occupied and controlled the Bainville site and

engaged in knowing statutory violations. The Court will grant Endurance's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a).

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiff Endurance's Motion for Summary Judgment (Doc. 184) is **GRANTED.**

2. The Clerk shall enter judgment in favor of Endurance and against Dual.

DATED this 23rd day of March, 2023.

_____
Brian Morris, Chief District Judge
United States District Court